1  KAREN P. HEWITT
   United States Attorney
2  WILLIAM A. HALL, JR.
   Assistant U.S. Attorney
3  California State Bar No. 253403
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7046/(619) 235-2757 (Fax)
   Email: william.a.hall@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10 UNITED STATES OF AMERICA,          )   Criminal Case No. 08CR0804-W
                                      )
11                       Plaintiff,   )   DATE:        May 12, 2008
                                      )   TIME:        2:00 p.m.
12            v.                      )   Before Honorable Thomas J. Whelan
                                      )
13 MARIA LAURA LAMUG (1),             )   UNITED   STATES'   STATEMENT   OF
14 JESUS JUAN MANUEL ORTIZ (2),       )   FACTS   AND   MEMORANDUM   OF
                                      )   POINTS AND AUTHORITIES
15                    Defendant(s).   )
                                      )
16

17                             I

18                STATEMENT OF THE CASE

19        The Defendants, Maria Laura Lamug and Jesus Juan Manuel Ortiz (hereinafter

20 "Defendants"), were charged by a grand jury on March 19, 2008 with violating 21 U.S.C. §§ 952

21 and 960, importation of methamphetamine, 21 U.S.C. § 841(a)(1), possession of methamphetamine

22 with the intent to distribute, and aiding and abetting. Defendants were arraigned on the Indictment

23 on March 20, 2008, and entered a plea of not guilty.

24 //

25 //

26 //

27

28                             3

## II

## STATEMENT OF FACTS

Defendants were apprehended on the evening of March 5, 2008 by United States Customs and Border Protection ("CBP") Officers at the Calexico, California West Port of Entry.  There, Defendants entered the vehicle inspection lanes as the sole occupants of a 2003 Toyota Camry ("the vehicle").  Defendant Lamug was the driver and registered owner of the vehicle; Ortiz was the passenger.

At the time of Defendants' entry in the vehicle, a CBP Canine Enforcement Officer was conducting a pre-primary sweep of vehicles using his Narcotic Detector Dog ("NDD").  The NDD alerted to the presence of the odor of a controlled substance near vehicle's dash. At primary inspection, both Defendants gave a negative Customs declarations to a CBP Officer.  Defendants and the vehicle were then referred to the secondary lot for further inspection.

At secondary inspection, Defendants provided additional negative Customs declarations. During inspection, a CBP Officer observed what he identified as a compartment built into the dash of the vehicle.  Further inspection of the vehicle revealed the presence of a non-factory compartment built into the vehicle's dash.  A total of 18 packages were found concealed within the compartment.  The combined weight of the packages was approximately 10.60 kilograms (23.32 pounds).  A sample taken from one of the packages field tested positive for methamphetamine.  Defendants were then arrested.  In a post-Miranda statement, Defendant Lamug admitted knowledge of the narcotics in the vehicle, and admitted that she would be paid $1,500 USD for driving the vehicle into the United States.  Defendant Lamug also admitted that Defendant Ortiz was aware of the presence of narcotics in the vehicle.

//

//

//

//

4

### III

**A.    DISCOVERY REQUESTS AND MOTION TO PRESERVE EVIDENCE**

**1.    The Government Has or Will Disclose Information Subject To Disclosure Under Rule 16(a)(1)(A) and (B) Of The Federal Rules Of Criminal Procedure**

The government has disclosed, or will disclose well in advance of trial, any statements subject to discovery under Fed. R. Crim. P. 16(a)(1)(A) (substance of Defendant's oral statements *in response to government interrogation*) and 16(a)(1)(B) (Defendant's relevant written or recorded statements, written records containing substance of Defendant's oral statements *in response to government interrogation*, and Defendant's grand jury testimony).

**a.    The Government Will Comply With Rule 16(a)(1)(D)**

Defendants have already been provided with their own "rap" sheet and the government will produce any additional information it uncovers regarding Defendants' criminal records. Any subsequent or prior similar acts of Defendants that the government intends to introduce under Rule 404(b) of the Federal Rules of Evidence will be provided, along with any accompanying reports, at a reasonable time in advance of trial.

**b.    The Government Will Comply With Rule 16(a)(1)(E)**

The government will permit Defendants to inspect and copy or photograph all books, papers, documents, data, photographs, tangible objects, buildings or places, or portions thereof, that are material to the preparation of Defendants' defense or are intended for use by the government as evidence-in-chief at trial or were obtained from or belong to Defendants.

Reasonable efforts will be made to preserve relevant physical evidence which is in the custody and control of the investigating agency and the prosecution, with the following exceptions: drug evidence, with the exception of a representative sample, is routinely destroyed after 60 days, and vehicles are routinely and periodically sold at auction. Records of radio transmissions, if they existed, are frequently kept for only a short period of time and may no longer be available. Counsel should contact the Assistant United States Attorney assigned to the case two weeks before

5

1  the scheduled trial date and the Assistant will make arrangements with the case agent for counsel

2  to view all evidence within the government's possession.

3            c.        The Government Will Comply With Rule 16(a)(1)(F)

4        The government will permit Defendants to inspect and copy or photograph any results or

5  reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof,

6  that are within the possession of the government, and by the exercise of due diligence may become

7  known to the attorney for the government and are material to the preparation of the defense or are

8  intended for use by the government as evidence-in-chief at the trial.  Counsel for Defendants

9  should contact the Assistant United States Attorney assigned to the case and the Assistant will

10  make arrangements with the case agent for counsel to view all evidence within the government's

11  possession.

12
            d.        The Government Will Comply With Its Obligations Under Brady v.
13                     Maryland

14        The government is well aware of and will fully perform its duty under Brady v. Maryland,

15  373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory

16  evidence within its possession that is material to the issue of guilt or punishment.  Defendants,

17  however, are not entitled to all evidence known or believed to exist that is, or may be, favorable

18  to the accused, or that pertains to the credibility of the government's case.  As stated in United

19  States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

20            [T]he prosecution does not have a constitutional duty to disclose every bit of
             information that might affect the jury's decision; it need only disclose information
21            favorable to the defense that meets the appropriate standard of materiality.

22  611 F.2d at 774-775 (citations omitted).  See also United States v. Sukumolachan, 610 F.2d 685,

23  687 (9th Cir. 1980) (the government is not required to create exculpatory material that does not

24  exist); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any

25  pretrial privileges not contained in the Federal Rules of Criminal Procedure).

26  //

27

28                                                   6

e.    Discovery Regarding Government Witnesses

(1)    Agreements.  The government has disclosed or will disclose the terms of any agreements by Government agents, employees, or attorneys with witnesses that testify at trial.  Such information will be provided at or before the time of the filing of the Government's trial memorandum.[1]  The government will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972).

(2)    Bias or Prejudice.  The government has provided or will provide information related to the bias, prejudice or other motivation to lie of government trial witnesses as required in Napue v. Illinois, 360 U.S. 264 (1959).

(3)    Criminal Convictions.  The government has produced or will produce any criminal convictions of government witnesses plus any *material* criminal acts which did not result in conviction.  The government is not aware that any prospective witness is under criminal investigation.

(4)    Ability to Perceive.  The government has produced or will produce any evidence that the ability of a government trial witness to perceive, communicate or tell the truth is impaired or that such witnesses have ever used narcotics or other controlled substances, or are alcoholics.

(5)    Witness List.  The government will endeavor to provide Defendants with a list of all witnesses which it intends to call in its case-in-chief at the time the government's trial memorandum is filed, although delivery of such a list is not required.  See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).  Defendants, however, are not entitled to the production of addresses or phone numbers of possible government witnesses.  See United

---

[1] As with all other offers by the government to produce discovery earlier than it is required to do, the offer is made without prejudice.  If, as trial approaches, the government is not prepared to make early discovery production, or if there is a strategic reason not to do so as to certain discovery, the government reserves the right to withhold the requested material until the time it is required to be produced pursuant to discovery laws and rules.

7

States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert. denied, 419 U.S. 834 (1974). Defendants have already received access to the names of potential witnesses in this case in the investigative reports previously provided to them.

(6)    Witnesses Not to Be Called.  The government is not required to disclose all evidence it has or to make an accounting to Defendants of the investigative work it has performed.  Moore v. Illinois, 408 U.S. 786, 795 (1972); see  United States v. Gardner, 611 F.2d 770, 774-775 (9th Cir. 1980).  Accordingly, the government objects to any request by Defendants for discovery concerning any individuals whom the government does not intend to call as witnesses.

(7)    Favorable Statements.  The government has disclosed or will disclose the names of witnesses, if any, who have made favorable statements concerning Defendants which meet the requirements of Brady.

(8)    Review of Personnel Files.  The government has requested or will request a review of the personnel files of all federal law enforcement individuals who will be called as witnesses in this case for Brady material.  The government will request that counsel for the appropriate federal law enforcement agency conduct such review.  United States v. Herring, 83 F.3d 1120 (9th Cir. 1996); see, also, United States v. Jennings, 960 F.2d 1488, 1492 (9th Cir. 1992); United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).

Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v. Cadet, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable to the defense that meets the appropriate standard of materiality . . ." United States v. Cadet, 727 F.2d at 1467, 1468.  Further, if counsel for the United States is uncertain about the materiality of the information within its possession in such personnel files, the information will be submitted to the Court for in camera inspection and review.

(9)    Government Witness Statements. Production of witness statements is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies

8

on direct examination. <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 (9th Cir. 1986); <u>United States v. Mills</u>, 641 F.2d 785, 790 (9th Cir. 1981)).  Indeed, even material believed to be exculpatory and therefore subject to disclosure under the <u>Brady</u> doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act.  <u>See</u> <u>United States v. Bernard</u>, 623 F.2d 551, 556-57 (9th Cir. 1979).

The government reserves the right to withhold the statements of any particular witnesses it deems necessary until after the witness testifies.  Otherwise, the government will disclose the statements of witnesses at the time of the filing of the government's trial memorandum, provided that defense counsel has complied with Defendant's obligations under Federal Rules of Criminal Procedure 12.1, 12.2, and 16 and 26.2 and provided that defense counsel turn over all "reverse Jencks" statements at that time.

    f.  The Government Objects To The Full Production Of Agents' Handwritten Notes At This Time

Although the government has no objection to the preservation of agents' handwritten notes, it objects to requests for full production for immediate examination and inspection.  If certain rough notes become relevant during any evidentiary proceeding, those notes will be made available.

Prior production of these notes is not necessary because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions *and* they have been approved or adopted by the witness.  <u>United States v. Spencer</u>, 618 F.2d 605, 606-607 (9th Cir. 1980); <u>see</u> <u>also</u> <u>United States v. Griffin</u>, 659 F.2d 932, 936-938 (9th Cir. 1981).

    g.  All Investigatory Notes and Arrest Reports

The government objects to any request for production of all arrest reports, investigator's notes, memos from arresting officers, and prosecution reports pertaining to Defendants.  Such reports, except to the extent that they include <u>Brady</u> material or the statements of Defendants, are

9

1   protected from discovery by Rule 16(a)(2) as "reports . . . made by . . . Government agents in

2   connection with the investigation or prosecution of the case."

3        Although agents' reports may have already been produced to the defense, the government

4   is not required to produce such reports, except to the extent they contain <u>Brady</u> or other such

5   material.  Furthermore, the government is not required to disclose all evidence it has or to render

6   an accounting to Defendants of the investigative work it has performed.  <u>Moore v. Illinois</u>,

7   408 U.S. 786, 795 (1972); <u>see</u> <u>United States v. Gardner</u>, 611 F.2d 770, 774-775 (9th Cir. 1980).

8   If the United States intends to introduce TECS information at trial, discovery of the relevant TECS

9   reports will be made at least by the time of the filing of its trial memorandum.

10                h.      <u>Expert Witnesses</u>.

11       Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial

12  memorandum, the government will provide the defense with notice of any expert witnesses the

13  testimony of whom the government intends to use under Rules 702, 703, or 705 of the Fed. R. of

14  Evidence in its case-in-chief.  Such notice will describe the witnesses' opinions, the bases and the

15  reasons therefor, and the witnesses' qualifications.  Reciprocally, the government requests that the

16  defense provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

17                i.      <u>Information Which May Result in Lower Sentence</u>.

18       Defendants have claimed or may claim that the government must disclose information

19  about any cooperation or any attempted cooperation with the government as well as any other

20  information affecting Defendants' sentencing guidelines because such information is discoverable

21  under <u>Brady v. Maryland</u>.  The government respectfully contends that it has no such disclosure

22  obligations under <u>Brady</u>.

23       The government is not obliged under <u>Brady</u> to furnish a defendant with information which

24  he or she already knows.  <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986), <u>cert.</u>

25  <u>denied</u>, 479 U.S. 1094 (1987); <u>United States v. Prior</u>, 546 F.2d 1254, 1259 (5th Cir. 1977).  <u>Brady</u>

26  is a rule of disclosure.  There can be no violation of <u>Brady</u> if the evidence is already known to

27

28                                    10

1    Defendants.  Assuming that Defendants did not already possess the information about factors

2    which might affect their respective guideline range, the government would not be required to

3    provide information bearing on Defendants' mitigation of punishment until after Defendants'

4    convictions or pleas of guilty and prior to their sentencing dates.  "No [Brady] violation occurs if

5    the evidence is disclosed to the defendant at a time when the disclosure remains of value."  United

6    States v. Juvenile Male, 864 F.2d 641 (9th Cir. 1988).

7    **B.      DEFENDANTS' STATEMENTS SHOULD NOT BE SUPPRESSED**

8        Defendants move for the suppression of post-Miranda statements to agents, asserting that

9    the statements were involuntary and that Miranda waivers were not knowingly and voluntarily

10   given.  Defendants fail to show that any post-arrest waiver was not knowingly, voluntarily, and

11   intelligently made.  Defendants' motion to suppress statements should be denied without an

12   evidentiary hearing.

13       **1.      Post-Miranda Statements**

14       Defendants move to suppress statements and request that the government prove that all

15   statements were voluntarily made, and made after a knowing and intelligent Miranda waiver.

16   Defendants contend that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine

17   whether Defendants' statements were voluntary.

18           a.      Knowing, Intelligent, and Voluntary Miranda Waiver

19       A statement made in response to custodial interrogation is admissible under Miranda v.

20   Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates

21   that the statement was made after an advisement of Miranda rights, and was not elicited by

22   improper coercion.  See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of

23   evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda

24   rights should not be found in the "absence of police overreaching").

25       A valid Miranda waiver depends on the totality of the circumstances, including  the

26   background, experience, and conduct of the defendant.  North Carolina v. Butler, 441 U.S. 369,

27

28                                                        11

374-75 (1979).   To be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The Government bears the burden of establishing the existence of a valid Miranda waiver. North Carolina v. Butler, 441 U.S. at 373. In assessing the validity of a defendant's Miranda waiver, this Courts should analyze the totality of the circumstances surrounding the interrogations.  See Moran v. Burbine, 475 U.S. at 421. Factors commonly considered include: (1) the defendant's age (see United States v. Doe, 155 F.3d 1070, 1074-75 (9th Cir. 1998) (en banc) (valid waiver because the 17 year old defendant did not have trouble understanding questions, gave coherent answers, and did not ask officers to notify parents), (2) the defendant's familiarity with the criminal justice system (see United States v. Williams, 291 F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part because defendant was familiar with the criminal justice system from past encounters), (3) the explicitness of the Miranda waiver (see United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written Miranda waiver is "strong evidence that the waiver is valid"); United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where Miranda rights were read to defendant twice and defendant signed a written waiver), and (4) the time lapse between the reading of the Miranda warnings and the interrogation or confession.  See Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995) (valid waiver despite 15-hour delay between Miranda warnings and interview). Furthermore, if there are multiple interrogations, as occurred in this case, repeat Miranda warnings are generally not required unless an "appreciable time" elapses between interrogations.  See United States v. Nordling, 804 F.2d 1466, 1471 (9th Cir. 1986).

Here, the agents scrupulously honored the letter and spirit of Miranda in carefully advising Defendant Lamug of her Miranda rights prior to any post-arrest custodial interrogation.  Defendant Lamug agreed to waive her Miranda rights prior to questioning.  Based on the totality of the circumstances, Defendant Lamug's statements should not be suppressed because her Miranda waiver was knowing, intelligent, and voluntary.

12

b.    Defendant's Statements Were Voluntary

The inquiry into the voluntariness of statements is the same as the inquiry into the voluntariness of a waiver of <u>Miranda</u> rights. <u>See</u> <u>Derrick v. Peterson</u>, 924 F.2d 813, 820 (9th Cir. 1990).  Courts look to the totality of the circumstances to determine whether the statements were "the product of free and deliberate choice rather than coercion or improper inducement." <u>United States v. Doe</u>, 155 F.3d 1070, 1074(9th Cir. 1998)(<u>en</u> <u>banc</u>).

A confession is involuntary if "coerced either by physical intimidation or psychological pressure."  <u>United States v. Crawford</u>, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting <u>United States v. Haswood</u>, 350 F.3d 1024, 1027 (9th Cir. 2003)).  In determining whether a defendant's confession was voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.'"  <u>Clark v. Murphy</u>, 331 F.3d 1062, 1072 (9th Cir.), <u>cert. denied</u>, 540 U.S. 968 (2003) (<u>quoting</u> <u>Haynes v. Washington</u>, 373 U.S. 503, 513 (1963)).  Psychological coercion invokes no per se rule. <u>United States v. Miller</u>, 984 F.2d 1028, 1030 (9th Cir. 1993).  Therefore, the Court must "consider the totality of the circumstances involved and their effect upon the will of the defendant."  <u>Id.</u> at 1031 (<u>citing</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226-27 (1973)).

In determining the issue of voluntariness, this Court should consider the five factors under 18 U.S.C. § 3501(b).  <u>United States v. Andaverde</u>, 64 F.3d 1305, 1311 (9th Cir. 1995).  These five factors include: (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he or she was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he or she was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his or her right to the assistance of counsel; and (5)  whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.  18 U.S.C. § 3501(b).  All five statutory factors

13

1    under 18 U.S.C. § 3501(b) need not be met to find the statements were voluntarily made.  See

2    Andaverde, 64 F.3d at 1313.

3    　　　As discussed above, Defendant Lamug was read her Miranda rights pre-interview.  After

4    Defendant Lamug acknowledged her Miranda rights, a dialogue ensued between the ICE agents

5    and Defendant Lamug, whereupon Defendant Lamug decided to make a statement without having

6    an attorney present.  Defendant Lamug clearly understood her Miranda rights and agreed to waive

7    those rights.  See United States v. Gamez, 301 F.3d 1138, 1144 (9th Cir. 2002).  Defendant

8    Lamug's statements were not the product of physical intimidation or psychological pressure of any

9    kind by any government agent.  There is no evidence that Defendant Lamug's will was overborne

10   at the time of her statements.  Consequently, Defendants' motion to suppress statements as

11   involuntarily given should be denied.

12   　　　**2.    There Is No Need for an Evidentiary Hearing**

13   　　　Under Ninth Circuit and Southern District precedent, as well as Southern District Local

14   Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to

15   suppress only when the defendant adduces specific facts sufficient to require the granting of the

16   defendant's motion.  See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989); United

17   States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991); Crim. L.R. 47.1.  The local rule

18   further provides that "the Court need not grant an evidentiary hearing where either party fails to

19   properly support its motion for opposition."

20   　　　No rights are infringed by the requirement of such a declaration.  Requiring a declaration

21   from a defendant in no way compromises Defendants' constitutional rights, as declarations in

22   support of a motion to suppress cannot be used by the United States at trial over a defendant's

23   objection.  See Batiste, 868 F.2d at 1092 (proper to require declaration in support of Fourth

24   Amendment motion to suppress); Moran-Garcia, 783 F. Supp. at 1271-74 (extending Batiste to

25   Fifth Amendment motion to suppress).  Moreover, Defendants have as much information as the

26   United States in regards to the statements they made.  See Batiste, 868 F.2d at 1092.  At least in

27

28                                                    14

1    the context of motions to suppress statements, which require police misconduct suffered by

2    Defendants while in custody, Defendants certainly should be able to provide the facts supporting

3    the claim of misconduct.

4          Finally, any objection that 18 U.S.C. § 3501 requires an evidentiary hearing in every case

5    is of no merit.  Section 3501 requires only that the Court make a pretrial determination of

6    voluntariness "out of the presence of the jury."  Nothing in section 3501 betrays any intent by

7    Congress to alter the longstanding rule vesting the form of proof on matters for the court in the

8    discretion of the court.  Batiste, 868 F.2d at 1092 ("Whether an evidentiary hearing is appropriate

9    rests in the reasoned discretion of the district court.") (citation and quotation marks omitted).

10         The Ninth Circuit has expressly stated that a government proffer based on the statement

11    of facts attached to the complaint is alone adequate to defeat a motion to suppress where the

12    defense fails to adduce specific and material facts.  See Batiste, 868 F.2d at 1092.  Moreover, the

13    Ninth Circuit has held that a district court may properly deny a request for an evidentiary hearing

14    on a motion to suppress evidence because the defendant did not properly submit a declaration

15    pursuant to a local rule.  See United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991);

16    United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion

17    to suppress need be held only when the moving papers allege facts with sufficient definiteness,

18    clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); see

19    also United States v. Walczak, 783 F. 2d 852, 857 (9th Cir. 1986) (holding that evidentiary

20    hearings on a motion to suppress are required if the moving papers are sufficiently definite,

21    specific, detailed, and nonconjectural to whether contested issues of fact exist).  Even if

22    Defendants provide factual allegations, the Court may still deny an evidentiary hearing if the

23    grounds for suppression consist solely of conclusory allegations of illegality.  See

24    United States v. Wilson, 7 F.3d 828, 834-35 (9th Cir. 1993) (District Court Judge Gordon

25    Thompson did not abuse his discretion in denying a request for an evidentiary hearing where the

26

27

28                                              15

1    appellant's declaration and points and authorities submitted in support of motion to suppress

2    indicated no contested issues of fact).

3          As Defendants in this case have failed to provide declarations alleging specific and material

4    facts, the Court would be within its discretion to deny Defendants' motion based solely on the

5    statement of facts attached to the complaint in this case, without any further showing by the United

6    States.  Defendants' allegations of <u>Miranda</u> violations are based upon boilerplate language that

7    fails to demonstrate there is a disputed factual issue requiring an evidentiary hearing.  See <u>Howell</u>,

8    231 F.3d at 623.

9

10   **C.     RE-WEIGHING AND RETESTING THE EVIDENCE IS UNNECESSARY AND
         NOT REQUIRED**

11         Defendants have requested that the Court issue an order to retest and re-weigh the evidence.

12   Although the Government does not oppose Defendants' right pursuant to Fed. R. Crim. P. 16 to

13   inspect and examine the seized evidence, Defendants provide no justifiable basis to retest and re-

14   weigh the evidence.  This Court is not required to order the retesting and re-weighing of the

15   evidence, and such an order would constitute a waste of government resources and an unnecessary

16   delay in the case.

17         District courts have discretion to deny a defendant's request to retest and/or re-weigh

18   evidence.  See  <u>United States v. Garcia</u>, 900 F.2d 571, 574 (2d Cir. 1990); <u>see also</u> <u>United States</u>

19   <u>v. Orozco-Rodriguez</u>, 60 F.3d 705, 707 (10th Cir. 1995); <u>United States v. Small</u>, 74 F.3d 1276,

20   1287 (D.C. Cir. 1996).  Where nothing is presented to raise a "reasonable dispute" over the weight

21   of drugs, a district court does not abuse its discretion in refusing to order the re-weigh.  <u>Garcia</u>, 900

22   F.2d at 574.  For instance, unless a court has reason to believe that any discrepancy in the weight

23   of the drugs is enough to make a defendant eligible for a lower sentence or have a lower mandatory

24   minimum apply to the defendant's case, it is within the court's discretion to deny a defendant's

25   request to re-weigh the evidence.  See <u>Orozco-Rodriguez</u>, 60 F.3d at 707; <u>Small</u>, 74 F.3d at 1287

26   (holding that the district court did not abuse its discretion in denying the defendant's motion to re-

27

28                                                    16

1    weigh the drugs where the defendant failed to provide any reason to dispute the Drug Enforcement

2    Administration's laboratory analysis and where the defendant had the opportunity to cross-examine

3    the DEA chemist at trial).  The simple fact that the weight of the drugs at issue may be "close to

4    the line" between two guideline ranges or a mandatory minimum cutoff does not raise a

5    "reasonable dispute."  Garcia, 900 F.2d at 575 (affirming district court's denial of the defendant's

6    request to re-weigh crack cocaine at time of sentencing where weight of drugs was only 9.3

7    milligrams over the applicable guideline range minimum).

8        Defendants have not presented any evidence or argument to raise a "reasonable dispute"

9    about the weight or purity of drugs at issue.  Unless and until such a possibility can be established,

10    the Court should exercise its clear discretion to deny their request for a retest and re-weigh of the

11    drugs.  See Orozco-Rodriguez, 60 F.3d at 707; Small, 74 F.3d at 1287; Garcia, 900 F.2d at 574.

12    Such an order without a showing of a "reasonable dispute" would amount to an unnecessary

13    expenditure of Government resources and delay in this case.

14        It should be noted that the Ninth Circuit has, on at least one occasion, held that, in the

15    context of a supervised release revocation proceeding, a supervisee is entitled to retest positive

16    urine samples.  United States v. Martin, 984 F.2d 308 (9th Cir. 1993).  That case, however, is

17    distinguishable from the present circumstances.  First, in Martin, the defendant was "denied all but

18    the most cursory opportunity to impeach or refute the evidence" supporting the revocation of his

19    supervised release.   Martin, 984 F.2d at 312.   The court found it important that the only

20    Government witness available for cross-examination on the defendant's positive drug test was a

21    drug counselor who had no knowledge as to the testing procedures employed or the chain of

22    custody.  Id.  Here, there will be no such danger, as Defendants will have a full opportunity to

23    cross-examine the DEA's chemist on the procedures employed and results reached in this case.

24    The second reason relied upon by the Martin court is also of no benefit to Defendants.  The court

25    there found that the Government failed to demonstrate that it had "good cause" to avoid the retest

26    because the Government did not provide any "conventional substitutes for live testimony."  Martin,

27

28                                                    17

1   984 F.2d at 313 (quoting <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 783 n.5 (1973)).  In contrast, in this

2   case Defendants will have every opportunity to confront and challenge the findings made by the

3   DEA chemist at trial.  The final reason relied upon by the <u>Martin</u> court is equally inapplicable to

4   this case.  The Ninth Circuit decided not to follow other circuits that had held that results from

5   such urinalysis tests are "so inherently reliable" that they should be accepted without any right to

6   confront the results.  Here, again, there is no such danger because there will be no infringement

7   upon Defendants' right to confront evidence presented against them.

8   **D.    THE DRUG STATUTES ARE CONSTITUTIONAL, AND THE INDICTMENT NEED NOT ALLEGE KNOWLEDGE OF THE AMOUNT AND TYPE OF**

9   **NARCOTICS**

10      The Ninth Circuit has already squarely and repeatedly rejected the claim that the federal

11  drug laws, including 21 U.S.C. §§ 841, 952, and 960, are facially unconstitutional.  <u>See</u> <u>United</u>

12  <u>States v. Jimenez</u>, 300 F.3d 1166, 1171 (9th Cir. 2002); <u>United States v. Marcucci</u>, 299 F.3d 1156,

13  1165 (9th Cir.), <u>cert. denied</u>, 123 S. Ct. 1600 (2002); <u>United States v. Carranza</u>, 289 F.3d 634, 643

14  (9th Cir.), <u>cert. denied</u>, 537 U.S. 1037 (2002); <u>United States v. Buckland</u>, 289 F.3d 558, 562 (9th

15  Cir.) (en banc), <u>cert. denied</u>, 535 U.S. 1105 (2002); <u>United States v. Mendoza-Paz</u>, 286 F.3d 1104,

16  1109-10 (9th Cir.), <u>cert. denied</u>, 537 U.S. 1038 (2002); <u>United States v. Varela- Rivera</u>, 279 F.3d

17  1174, 1175 n.1 (9th Cir. 2002).  Defendants' arguments to the contrary are meritless.

18      Furthermore, in <u>Carranza</u>, the Ninth Circuit reaffirmed longstanding precedent that the

19  United States need not prove that defendants knew the type or quantity of controlled substance

20  they were smuggling in order to sustain a conviction under the federal drug statutes.  <u>Id.</u> at 643-44.

21  The United States must prove only that Defendants knew they were smuggling some type of

22  controlled substance.  <u>Id.</u> at 644.  Any argument that <u>Carranza</u> should be ignored was rejected by

23  the Ninth Circuit in <u>United States v. Hernandez</u>, 322 F.3d 592, 602 (9th Cir. 2003).  Again,

24  Defendants' argument has no merit.

25  //

26  //

27

28                                                    18

**E.    THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED**

Defendants move to dismiss the indictment against them for alleged errors in the instructions given to the indicting grand jury during its impanelment by the Honorable Larry A. Burns on January 10, 2007.  The United States explicitly incorporates by reference its extensive briefing on this issue submitted in United States v. Renovato, 07CR3413-BEN, and United States v. Barron-Galvan, 07CR3469-H.  This motion has been denied by each and every court in this district that has considered it, and should also be denied in this case.  The United States would be happy to supplement its response and opposition to this motion at the Court's request.

**F.    NO OPPOSITION TO LEAVE TO FILE FURTHER MOTIONS**

The United States does not object to the granting of leave to allow Defendants to file further motions, as long as the order applies equally to all parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

IV

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that Defendants' motions, except where not opposed, be denied.

DATED: May 2, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ William A. Hall, Jr.
WILLIAM A. HALL, JR.
Assistant United States Attorney

19